GERZÓN BEAUCHAMP, Plaintiff and Appellant, *v.* DORADO BEACH HOTEL, Defendant and Appellee.

No. R-69-236.     Decided February 12, 1970.

*Demetrio Fernández* and *Francisco R. Acevedo Castañeda* for appellant. *Fiddler, González & Rodríguez* and *Pedro Pumarada* for appellee.

MR. JUSTICE RIGAU delivered the opinion of the Court.

There is no controversy over the facts. Gerzón Beauchamp was employed by the Dorado Beach Hotel as "apprentice croupier." Subsequently he complained that in accordance with the collective bargaining agreement he should have been appointed "probationary croupier" and not "apprentice." That type of appointment entails a difference in wages, since as apprentice croupier his monthly wage was of $300 while as probationary croupier it was of $520.

The *Unión de Trabajadores de la Industria Gastronómica, Local 610*, exclusive representative for collective bargaining purposes of defendant's croupiers, filed a complaint before the Grievance Committee established by the collective bargaining agreement. When a deadlock was produced among the members of the Committee, the parties requested that the Conciliation and Arbitration Bureau of the Department of Labor appoint an arbitrator to take cognizance of the complaint. It was thus done, and they submitted to the latter the following submission agreement: "Whether or not the wage of $300 assigned to Gerzón Beauchamp, on November 24, 1964, was correct."

On September 29, 1966 the arbitrator rendered his award. He concluded that appellant should have been employed as probationary croupier and not as apprentice croupier and ordered "the back payment of wages on the basis of the classification of Probationary Croupier, effective on the date of his appointment."

Once the award was rendered the representatives of the parties met in order to execute the decision of the arbitrator. They reached an agreement but the payment of the sum equal to the unpaid amount for liquidation of damages as ordered in these cases by § 13 of Act No. 379 of 1948, as amended, 29 L.P.R.A. § 282, was not requested at that time.

On August 20, 1968 plaintiff, availing himself of the summary proceedings authorized by Act No. 2 of October 17, 1961, 32 L.P.R.A. § 3118 *et seq.*, filed a complaint before the Superior Court claiming wages, requesting the court to order the payment of the above-mentioned additional sum, plus costs and attorney's fees. Defendant answered establishing several questions of law as defense but there was no controversy concerning the facts. On February 28, 1969 plaintiff moved for a summary judgment. The court rendered summary judgment in favor of defendant and dismissed the

claim for the sum equal to the unpaid amount, object of the complaint.

█ Complainant assigns that the trial court erred in understanding that plaintiff was not entitled to claim the additional sum equal to the unpaid amount because that question was not raised before the arbitrator and because it also understood that our decision in *Pérez* v. *Water Resources Authority*, 87 P.R.R. 110 (1963), has the scope of considering the right to the additional sum which the aforementioned Act No. 379 grants to the worker as waived if the latter resorts to the Grievance Committee and to arbitration.

Plaintiff-appellant is right. Whether or not the wage of $300 assigned to Beauchamp was correct was the question raised before the arbitrator. The arbitrator concluded that that wage was not correct. He concluded that Beauchamp was covered by Art. VI(5) of the collective agreement, which provides for a monthly wage of $520, and ordered the back payment of his wages on the basis of that scale. Speaking with exactness, in the light of the submission agreement— whether or not the $300 wage was correct—what the arbitrator decided was that it was not because Beauchamp was covered by Art. VI(5) of the agreement. That is the strict answer to the submission agreement. The rest is a necessary conclusion of the arbitrator's decision: If he was covered by Art. VI(5) of the agreement, the correct wage was $520 because that is the wage established by said article; and since Beauchamp had been paid at the rate of $300 monthly it was proper to pay him what they owed him.

█ The question of whether or not he should have been paid the additional sum did not have to be submitted to the arbitrator since that is an unavoidable consequence—since it is thus prescribed by law—of the arbitrator's decision. Thus, for example, the arbitrator did not have to decide either that plaintiff had to be paid in legal tender money. Neither

could the parties bargain against the legal provision which orders the additional sum, nor could the arbitrator render it inoperative since the awards cannot violate the public policy, *Labor Relations Board* v. *N.Y. & P.R. S.S. Co.*, 69 P.R.R. 730, 746 (1949), and the provisions of law on hours and wages embody the public policy of the country on those questions.

In *Encarnación* v. *Jordán*, 78 P.R.R. 481 (1955) we stated the following at p. 489:

"[I]f the employer fails to pay his employees the stipulated wages he shall be bound to pay them, in addition to the unpaid sum, an equal sum as liquidation of damages in addition to the costs, expenses and attorney's fees. This is so because the provision of § 13 as well as other such provisions of the aforesaid Act No. 379, such as the one fixing the legal working day, the one providing compensation at double the rate for extra hours of work, the one declaring that the additional compensation on the basis of double time for extra hours of work may not be waived, etc., form a part of and must be considered as incorporated into the labor contract since any agreement to the contrary between the employer and his employees is superseded by the statute."

The payment of the penalty, because it is ordered by law, and because it is considered a part of the employment contract, does not depend on resorting to a suit for it also lies when the debt for wages—debt which gives rise to the penalty—is established by a grievance committee or through arbitration.

Since in their briefs the parties resort to the cases of *Pérez* v. *Water Resources Authority, supra*, of *Rivera* v. *Land Authority*, 83 P.R.R. 251 (1961) and of *L.R.B.* v. *Presbyterian Hospital, Inc.*, 96 P.R.R. 557 (1968), to support some of their arguments, we think it is convenient to state the following. Each one of the three aforementioned cases and also the case at bar are distinct cases which arose from different states of fact and that therefore each one required and require its own decision.

In *Rivera* v. *Land Authority, supra,* we were dealing with a laborer member of the union who was discharged. Since the laborer did not agree with his discharge, the employer, pursuant to the provisions of the collective bargaining agreement, submitted the case to the Complaint and Grievance Committee and from there it went to the arbitrator. In contrast with the employer's attitude, the laborer assumed the position that he did not consent in submitting the matter to arbitration and he resorted to the courts.

So that the question raised in *Rivera* was whether a laborer could disregard the provision of the collective bargaining agreement which provided the mechanism of a Complaint and Grievance Committee and arbitration for settling labor-management disputes. Of course, we decided that that could not be. There we said, at page 257, that "A valid collective bargaining agreement binds the union and its members individually as well as the employer." Collective bargaining agreements negotiated by the unions and the employers would be unnecessary if the individual laborers could disregard its provisions. The collective bargaining agreement in a great proportion is considered to be vested with public interest because it tends to achieve industrial peace. What appellant claimed in *Rivera* was equivalent to practically bringing about a chaos in labor-management bargaining. The case at bar is different from that of *Rivera;* herein plaintiff resorted to the mechanism of the Grievance Committee and arbitration.

In *Pérez, supra,* a dispute arose between the laborer and the employer for overtime wages. There the agreement provided for the elucidation through arbitration of all the claims and complaints which might arise concerning the provisions of the agreement which were not settled by the Grievance Committee. Pérez asserted that he did not question the ruling in *Rivera,* that is, that the laborer is bound to resort to the Grievance Committee and to arbitration, if it was thus agreed

in the agreement, but he alleged that his complaint could not be subject to those mechanisms because it was a question of overtime wages. In other words, he alleged that the matter object of his complaint was excluded from the arbitration provision. We examined the agreement and found that he was wrong. Pérez confused the means, that is, the mechanism, with the substance. He failed to see that the Committee and arbitration were mechanisms to determine whether the employer actually owed him overtime pay, but that the law provides the manner in which they shall be paid. Something similar happens in the courts. The latter determine whether or not wages are owed and if they are, they apply the law which is the one which provides the manner of paying them.

In *Pérez* after discussing the undeniable social values served by collective bargaining agreements and by the grievance and arbitration mechanisms in the field of the labor-management relations, and after examining the case law of the Supreme Court of the United States on this matter, we decided that since it is not forbidden by law nor by the Constitution, the disputes over wages may be submitted to the aforementioned mechanisms if it is thus agreed in the collective bargaining agreement. We found that it was thus agreed in that case and that therefore Pérez should comply with the agreement. We stated there that: "The collective agreement is the law between the parties, provided it does not violate the laws nor the Constitution." Nothing was raised there nor was anything decided in regard to the additional sum, known as the penalty, ordered by the aforementioned Act No. 379 and which gave rise to the controversy in the case at bar.

Two years after our decision in *Pérez* a situation like the one in that case was raised before the Supreme Court of the United States and said Court rendered judgment in the same manner as we did. Instead of resorting to the grievance and arbitration mechanism provided by the collective bargaining

agreement, a laborer filed a complaint against his employer before the courts, claiming wages. Just as Pérez, he alleged that said matter was excluded from the arbitration provision of the agreement. The Court found that it was not and decided that the laborer should resort to the mechanism established by the agreement. *Republic Steel Corp.* v. *Maddox*, 379 U.S. 650 (1965).

In *L.R.B.* v. *Presbyterian Hospital, Inc., supra,* the situation was also different from that of the case at bar. Merely, there the employer refused to obey the arbitrator's award and the Labor Relations Board resorted to this Court requesting us to order the employer to comply therewith. Respondent-employer's position was that the award was void. After examining the question we found that said position lacked merits and we ordered the employer to comply with the award. It was not raised therein either, nor did we decide, that the right to the additional sum granted by § 13 of Act No. 379 had been waived.

The distinguished legal representation of complainant neatly requests us to fix the attorney's fees of complainant pursuant to the provisions of the Act to Regulate the Granting of Attorney's Fees in Claim Cases of Workmen and Employees Against Their Employers, Act No. 402 of May 12, 1950 (32 L.P.R.A. §§ 3114–3117). We shall do it thus.

For the reasons stated in this opinion the judgment rendered by the Superior Court, Bayamón Part, on August 15, 1969, will be reversed; the claim for the equal sum not paid to complainant is sustained; the employer, Dorado Beach Hotel, will be ordered to pay to complainant the sum of $5,400 which is the unpaid equal amount, plus costs, and the amount of $1,500 for complainant's attorney's fees.[1] We fixed said sum for attorney's fees being aware of the fact that the same

---

[1] It was not alleged nor does the record show that there had been a transaction before the Secretary of Labor in connection with the claim for wages and the penalty. 29 L.P.R.A. § 282.

may be fixed taking into consideration not only the amount of the sum obtained, but also the importance of the case and the work performed by the attorney.

The decision herein shall only apply to the decisions of the Grievance Committees and to arbitration awards to be rendered as of the date of this opinion, but including the case at bar.

Mr. Justice Blanco Lugo did not participate herein.